**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

United States of America,      )
                               )   No. **CR 14-0184-1-PHX-NVW**
          Plaintiff,           )
                               )
     vs.                       )   Phoenix, Arizona
                               )   June 16, 2015
**Gordon Leroy Hall,**         )   1:50 p.m.
                               )
          Defendant.           )
_____)

**BEFORE:   THE HONORABLE NEIL V. WAKE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**(_Sentencing_)**

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1   **APPEARANCES:**

2   For the Plaintiff:

3           U.S. ATTORNEY'S OFFICE
            By:  **Lisa Jennis, Esq.**
4           By:  **Monica B. Edelstein, Esq.**
            40 N. Central Avenue, Suite 1200
5           Phoenix, Arizona 85004

6   For the Defendant:

7           STEPHEN C. KUNKLE PLLC
            By:  **Stephen C. Kunkle, Esq.**
8           5150 N. 16th Street, Suite A222
            Phoenix, Arizona 85016

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                    P R O C E E D I N G S

 2            THE COURTROOM DEPUTY:  Criminal Case 2014-184-01,

 3   United States of America versus Gordon Leroy Hall.  This is the

 4   time set for sentencing.

 5            Counsel, please announce for the record.          13:50:53

 6            MS. JENNIS:  Good afternoon, Your Honor.  Lisa Jennis

 7   and Monica Edelstein for the United States along with IRS

 8   Special Agent Kathleen Neri.

 9            MR. KUNKLE:  Good afternoon, Your Honor.  Stephen

10   Kunkle on behalf of Mr. Hall, who is present, seated to my    13:51:05

11   right.

12            THE COURT:  Good afternoon, counsel.  And good

13   afternoon, Mr. Hall.

14            And Ms. Jennis, please pull microphone over toward

15   you.                                                        13:51:16

16            All right.  Now, Mr. Kunkle, is Mr. Hall comfortable

17   proceeding sitting at counsel table?

18            MR. KUNKLE:  Your Honor, I think in light of what's

19   transpired previously, it would probably be better to proceed

20   in that fashion.  I think the marshals may appreciate that as  13:51:35

21   well.

22            THE COURT:  Without objection then, we'll proceed and

23   you and Mr. Hall may remain at counsel table.

24            If there's times where you would like to have the

25   better microphone, either counsel may come up to the podium if  13:51:48
</pre>

1    you prefer.  But Mr. Hall may remain at counsel table.

2              All right.  Mr. Hall, would you please state your full

3    name and date of birth.

4              THE DEFENDANT:  What does this living man that is here

5    before you, not in possession of any property owned or                    13:52:17

6    controlled by the State, not a trustee for any defendant in

7    these proceedings or any other proceedings and not in contempt

8    of this Court or any other court have to do at all with these

9    proceedings today?

10             THE COURT:  All right.  The record will show that the           13:52:39

11   defendant has refused to answer the Court's question and the

12   Court will note that the person present is Gordon Leroy Hall

13   known to the Court from the trial previously conducted.

14             Now --

15             THE DEFENDANT:  Let the record show that the                     13:52:53

16   non-response --

17             THE COURT:  No.  You are not allowed to speak unless

18   the Court invites you to speak and you have been given your

19   opportunity.  You will keep your silence or you will be removed

20   from the courtroom.                                                        13:53:07

21             THE DEFENDANT:  Let the record show the non-response

22   to the substance of my question --

23             THE COURT:  -- all right.

24             THE DEFENDANT:  -- that my -- that I am not in

25   possession of any property belonging to the state not --                  13:53:15

1          THE COURT:  All right.  Let me ask the marshals how

2     much time would it take to arrange us to have an audio link

3     from the courtroom to the holding cell?

4          THE MARSHAL:  Your Honor, we don't know.  We would

5     have to check with our supervisor.                              13:53:33

6          THE COURT:  Actually, Nick can you get that

7     information?  We'll pause for a moment while we find that out.

8          Mr. Hall, I am going to arrange to have an audio link

9     from the courtroom to the holding cell if you disrupt the

10    proceeding any further.  I will have the marshals remove you    13:53:48

11    from the courtroom, take you right through that door, have you

12    in the holding cell.  You will hear everything that goes on.

13    You will have your legal sentencing.  Nothing you say will be

14    able to disrupt these proceedings.  That's what's going to

15    happen if you disrupt the proceedings one more time.            13:54:03

16          Now, you will have opportunities to speak in these

17    proceedings.  The Court will advise you at the time you may

18    speak and you will be heard the full extent it's appropriate.

19          Now, I do want to follow through on that, Nick, and

20    we'll find out however much time we need to make that audio     13:54:19

21    connection.

22          Now, counsel, let me identify the documents I have.

23          I have the plea agreement, the presentence

24    investigation --

25          MR. KUNKLE:  There's no plea agreement.                   13:54:34

1              THE COURT:  I'm sorry.  Not the plea agreement.

2         I have the presentence investigation report, I have a

3    paper that was dated received by the clerk of the court April

4    27, 2015, called -- well, it's called Possible Misguided

5    Forwarding of Documents.  The document is essentially          13:55:08

6    unintelligible, but to the extent the document seeks anything,

7    it is denied.

8         All right.  Counsel, are there any other documents I

9    should have?

10             MS. JENNIS:  No, Your Honor.                          13:55:20

11             MR. KUNKLE:  No, Your Honor.

12             THE COURT:  All right.  And when determining the

13   sentence to be imposed today, I will consider the factors

14   specified in Title 18, United States Code Section 3553(a),

15   including the sentencing guidelines and any applicable policy   13:55:31

16   statements published by the US Sentencing Commission, and I

17   must impose a reasonable sentence.  But I am not compelled by

18   the guidelines to impose a sentence within the range determined

19   by application of the guidelines.  The sentencing guidelines do

20   not establish a presumption of what the sentence should be or   13:55:50

21   of what is a reasonable sentence, nor is the sentence outside

22   the sentencing guidelines presumed to be an unreasonable

23   sentence.  The sentencing guidelines are given no more nor less

24   weight than any other statutory factors.  In imposing a

25   sentence, the Court will make an individualized determination   13:56:08

1    based on the facts of this case.

2         Now, would both counsel confirm that they and the

3    defendant have received the presentence report.

4         MS. JENNIS:  The United States has received it, Your

5    Honor.                                                            13:56:20

6         MR. KUNKLE:  Your Honor, I have received not only the

7    draft presentence report but the final presentence report.  And

8    so the record is clear, I have made my efforts to convey the

9    contents thereof to Mr. Hall on more than one occasion,

10   including yesterday.  I think we took that up at our ex parte     13:56:38

11   hearing.

12        THE COURT:  Yes.  Let me state for the record that the

13   ex parte hearing immediately preceding this, Mr. Kunkle has

14   stated in detail the efforts he has made concerning the

15   presentence report including his reading of the entire report    13:56:54

16   to the defendant yesterday.  And if there are further

17   proceedings, I'm sure that ex parte proceeding will be unsealed

18   and the Court relies upon the information given in that time to

19   demonstrate that even though the defendant has, in general,

20   refused to cooperate with his attorney with respect to the       13:57:15

21   presentence report, Mr. Kunkle read it to him in substance

22   yesterday.  And he had full opportunity to comment, respond, or

23   assist in any way that he wished.

24        Is there anything further you need to say on that?

25        MR. KUNKLE:  Nothing, Your Honor.                           13:57:32

1          THE COURT:  All right.  Now, Mr. Kunkle, the Court

2    understands the situation you are in.  And I invite whether

3    there are any objections you wish to make to the presentence

4    report.  And the Court is aware that your client has not

5    cooperated with you, but with that limit, with that understood,    13:57:56

6    if there are any objections please proceed with them.

7          MR. KUNKLE:  Your Honor, yeah, first just so it's

8    clear, when Ms. Chappell and I met with Mr. Hall for the

9    presentence report interview, he refused to be interviewed.  So

10   the report reflects that in that the information in the report    13:58:13

11   before the Court, it's my understanding has been gleaned from

12   some information, perhaps, from South Carolina, the case that

13   preceded this, as well as information from prior presentence

14   reports and, I believe, other sources.  Ms. Chappell could

15   speak to that further.                                           13:58:35

16          With respect to objections, Your Honor, no, I did not

17   file any formal legal objections to the report.  I did not have

18   any clarifications or modifications to make to the report, to

19   its substance, by virtue of the fact that Mr. Hall chose not to

20   speak with me about the report or have any input whatsoever,     13:58:51

21   any biographical information or educational information.  It's

22   my experience usually there's some errors that are made, some

23   statements that are made that we can correct with the probation

24   officer on an informal level.

25          With respect to objections, and I will address this       13:59:06

1   again later on in my comments regarding sentencing, I know you

2   took up yesterday the relevant conduct objection with Mr. Heath

3   and Mr. Adams.  And while I could have spun for this Court a

4   memorandum on the effective intended loss I had been down that

5   road before, and I think that I didn't want to, in the current         13:59:31

6   posture of the case, file anything that would be considered

7   frivolous or not supported by substantive arguments that don't

8   have merit, I think, to the Court.  So in terms of the

9   objections I will speak to that a little later in terms of the

10  sentencing options before this Court in terms of a variance          13:59:49

11  issue.

12          But there's no objections per se to the relevant

13  conduct of the 93 million or the leadership roles at this

14  point.

15          THE COURT:  And we discussed this at length yesterday        14:00:00

16  in Mr. Adams' proceeding, which Mr. Hall was not here present

17  for.  But counsel recall what transpired, and I believe the

18  short of it is that the guideline calculations with respect to

19  the loss amount, or however we characterize it, in my view,

20  really don't matter much in this case; that the amounts lose         14:00:27

21  significance compared to the primary statutory purpose of

22  sentencing that the Court must consider in fashioning a

23  sentence in this case.  That's another way of saying whether I

24  do calculate it, I would, as I did before, at the $93 million

25  the presentence report states, but I don't view that as being        14:00:53

1    of real consequence for the sentencing.  We will focus on -- it

2    is a number that is too high to be useful in all the

3    circumstances of the case.  And we'll proceed to consider the

4    statutory purpose of sentencing in a more focused way.

5           Now, just trying to make a clear record here, was                14:01:14

6    there anything further, Mr. Kunkle?

7           MR. KUNKLE:  No.  Not on that issue, Your Honor.

8           THE COURT:  On any objection?  The matters for

9    allocution for sentencing and judgment we'll save for later.

10   But in terms of the presentence report and the guideline        14:01:32

11   calculations, do you have any other points?

12          MR. KUNKLE:  No, Your Honor.  And I believe that Ms.

13   Chappell got the numbers correct and the calculations are

14   correct in the presentence report.  And with respect to Mr.

15   Hall's criminal history, I had no reason, I did do some         14:01:45

16   independent research obviously from some discovery provided by

17   the government through Pacer, so I believe those calculations

18   are correct, too.  There's no objections there.

19          THE COURT:  Right.  All right.  The defendant has been

20   tried and been found guilty by the jury.  Pursuant to the      14:02:19

21   verdict of the jury, it is the judgment of the Court that the

22   defendant is guilty on Counts 1 and 2 each of aiding -- aid and

23   abet making fictitious instrument, in violation of Title 18,

24   United States Code Section 2 and Section 514(a)(1); and on

25   Counts 3 and 4 both of aid and abet using fictitious instrument  14:02:45

1   in violation of Title 18, United States Code Section 2, Section

2   514(a)(2).

3        The Court finds that the offense level computations,

4   the total offense level, the defendant's criminal history

5   category, and the applicable ranges are as stated in the          14:03:09

6   presentence investigation report.

7        Mr. Kunkle, would you prefer to allocute first or

8   after the government?

9        MR. KUNKLE:  I'd like to go last, Your Honor.  I like

10  to hear what the home team has to say first.                      14:03:23

11       THE COURT:  On the other hand, you need the

12  opportunity to persuade her, too.

13       MR. KUNKLE:  I have given up on that with Ms. Jennis,

14  Your Honor.

15       THE COURT:  I know that's tongue in cheek.                   14:03:36

16       Ms. Jennis, I will hear your allocution on behalf of

17  the government.

18       MS. JENNIS:  Your Honor, would you like me to

19  approach?

20       THE COURT:  Yes.  Please.  The microphone is better         14:03:44

21  there.

22       MS. JENNIS:  Just as a quick note, there was a

23  misspelling in Paragraph 43 of the PSR.  His youngest child is

24  not Alexander but Alexandria.  I did speak with the probation

25  officer earlier, but I didn't know her name.  I have been        14:04:06

1    informed it's Alexandria.  She is 20.

2         THE COURT:  It is ordered that Paragraph 23 is

3    corrected to change the name from Alexander to Alexandria.

4         MS. JENNIS:  Your Honor is very familiar with the

5    facts of the case having sat through trial, so let's examine     14:04:24

6    his criminal history.

7         In Paragraph 33 of the PSR, it discusses that in 1992,

8    around 1993, the defendant was involved in a conspiracy where

9    they deceived people into investing with them and then stole

10   their money.  He received 60 months with three years running    14:04:43

11   concurrent and two years consecutive with another federal

12   conviction that began in 1986 in which Mr. Hall gets involved

13   with the mob in New York City and receives 87 months for his

14   role in a securities fraud scheme.

15        A year after his release he's back in prison after        14:05:05

16   failing to report for both these violations.  When he gets out

17   in April of 2009, that's when his sovereign ideology begins.

18   By 2012, he's back to his old shenanigans and agrees to hide

19   property for a defendant involved in a Ponzi scheme.  He pleads

20   no contest again in a district court, federal district court,   14:05:31

21   this time in South Carolina to wire fraud and he got 180

22   months.

23        THE COURT:  What's the status of that case?  Is there

24   any appeal on that?

25        MS. JENNIS:  No, Your Honor.                               14:05:43

1          THE COURT:  All right.

2          MS. JENNIS:  He has been serving this 180-month

3     sentence since he was arrested on March 14th, 2013.  So I

4     calculated for the Court, it appears he's been serving -- he

5     served 27 months of that sentence.                          14:05:59

6          In the 2012 scheme, he involved his son Benton.

7     Benton Hall was born in August of 1991, so he watched his

8     father commit crimes since he was born.  And his dad went to

9     prison when he was just six years old.  When his father gets

10    out in 2009, Benton is now 18.  And what does his dad do?  He  14:06:23

11    takes him under his wing and brings him into a life of crime

12    and deception.  As you know, Benton was a co-conspirator not

13    only in this case but in the South Carolina case also.

14         His life, since he's been in his 30s, has been about

15    deceit.  In the PSR in Paragraph 50, they talk about him lying  14:06:46

16    to gain access to a drug program.  He hasn't paid taxes since

17    1984, 21 years.  Despite his incarceration for over 10 years

18    back in the '90s, he managed to obtain a 7,260 square foot home

19    in Mesa, Arizona, employ at least six people, and acquire

20    hundreds of followers through social media.                  14:07:14

21         In addition, when the FBI, the IRS, and there were

22    many other agencies involved in the search of his residence in

23    May of 2013, it was such a large residence, ATF was involved,

24    HSI, along with the Mesa Police Department, there were coins,

25    valuable gold and silver coins found.  There were firearms.  14:07:40

1    And there was a count dismissed for the firearms.  But as you

2    can see, Mr. Hall is a felon and can't possess firearms and

3    there were three firearms found in -- well, there were two

4    found in the hidden room in his master bedroom and those were

5    brand new assault rifles.  And there was some sort of pistol    14:08:04

6    found in his -- hidden in his master bedroom closet along with

7    ammunition and magazines, et cetera.  And there were other

8    firearms found in the residence, but those were in the

9    apartment over the five-car garage which his son Benton

10   resided.  And Benton did not have any felony convictions prior  14:08:28

11   to the one in South Carolina and then his second one here.

12        Gordon has about 126 months, by my calculation, giving

13   him credit for good time left on his sentence.  He's not been a

14   model prisoner.  And as you can see today, and on previous

15   occasions, he's disrupted this Court time and time again.  It's  14:08:53

16   important that when sentencing Mr. Hall, a person who has now

17   his fourth federal felony conviction, something that at least

18   in my experience I have not seen before, that the Court give

19   him more time than he's ever received before.

20        So the United States agrees with probation and agrees    14:09:20

21   that he should get a low end of the applicable guidelines which

22   is 292 months and that it be served concurrent to his South

23   Carolina sentence.

24        But that's not all we should talk about.  It's

25   certainly important to consider the 3553 factors determining    14:09:39

1   why the United States believes that -- and probation -- that a

2   292 months concurrent sentence is a fair one.

3        The nature and the circumstances of the offense are

4   quite serious.  And this is just one scheme of Mr. Hall's many

5   schemes.  And this one involved, you know, the printing of the       14:10:01

6   money orders in such a small period of time.  It was just a few

7   months it took to get this scheme together and to get all the

8   documentation.  I mean, Mr. Hall already had the clients.  And

9   to get it into that database and to start churning out those

10  money orders to the tune of $93 million all to be sent to the        14:10:24

11  IRS.  But it wasn't just the IRS.  I mean, this is was a giant

12  debt elimination scheme.  He didn't use the money orders as of

13  yet for the other elimination of debt, but over time, he filed

14  countless documents and setoff bonds and promissory notes and

15  other kind of ridiculous looking documents.  But that took up a      14:10:47

16  lot of paper and killed a lot of trees to eliminate all sorts

17  of debt.  No debt wasn't good enough.  It could be to post

18  bail.  It could be to get rid of credit card debt, mortgage

19  debt.

20       In this case, when the United States decided to charge          14:11:07

21  it and spoke with probation, we limited it just to the loss to

22  the IRS, because that was the only agency at that time that had

23  received money orders.

24       The next relevant factor is the history and

25  characteristics of the defendant.  Well, we already discussed        14:11:29

1    there are four federal felony convictions, this being the

2    fourth one.  It's bad.  And he has made a career of committing

3    crimes.  He has not only made a career for himself but he

4    involved his family, his son, his daughter.  You saw her

5    testify.  They are in the courtroom today.  She was employed by         14:11:52

6    him.  And he employed a lot of other young people who could

7    have been charged who were not charged, but very young people,

8    people who are 20, 21 years old, a lot of them still live with

9    their parents.  And he brought them into his home and he

10   involved them into his scheme.  And while he had another child       14:12:14

11   living in the home at the time, she wasn't involved in the

12   scheme but she was living it.  It was in the house.  That is

13   where he conducted the majority of his business and they did

14   have another office.

15         He has destroyed his children's lives.  I mean, Benton       14:12:31

16   is a prime example.  Your father is in prison since you are six

17   years old.  He gets out when you are an adult and what do you

18   do?  Bring him into the family business.  Unfortunately for

19   Benton, that was a life of crime.

20         Under 3553(a)(2), the Court should also ensure that          14:12:47

21   the sentence it imposes will reflect the seriousness of the

22   offense and afford adequate deterrence not only for criminal

23   conduct by the defendant, but for others.  It should protect

24   the public from the further crimes of all people.

25         And another consideration is to achieve general              14:13:09

deterrence and promote respect for the law.  And that's where
the 292-month sentence is most appropriate.  The Court must
send a message.

        The defendant is a sovereign citizen.  It's an
anti-government movement which has many faces.  We've seen it      14:13:30
in the news recently, sovereign citizens who don't like the
government who have violent standoffs with them, or they shoot
people in public places.  Those are domestic terrorists.  But
sovereigns are not all violent.  In this case, we have a
non-violent protester.  And how does he protest?  Through        14:13:49
lawsuits.  But it's not just a protest, it's a money making
scheme.  It's a scheme to eliminate debt.  It's a scheme to, in
essence, shut down our government because there are so many
people involved in stopping him and the dozens or hundreds of
people that he's recruited through social media to impede the    14:14:14
functioning of the United States government.

        He has been part of this movement since 2009 when he
was released from prison.  He has used social media to preach
his sovereign citizen ideology, so it has quickly spread
throughout the nation.  He has flooded the IRS with             14:14:35
anti-government paperwork and setoff documentation on behalf of
taxpayers throughout the nation.

        At trial, you heard from Revenue Officer Lyons about
the massive amounts of paperwork that he received from Mr. Hall
alone.  And remember, Mr. Hall had a staff, and the staff        14:15:00

1    talked about all the documents that they produced on behalf of

2    Mr. Hall's scheme.  So it wasn't just the money orders that got

3    sent.  And I believe that was approximately 10 pages just for

4    one year for Mr. Hall alone.  But there were all the documents

5    that he had sent in the past that didn't work, you know, the          14:15:26

6    setoff bonds and the promissory notes and all the, excuse my

7    words, the gobbledygook that went along with it.  All that

8    documentation, it was never enough that it was one thing

9    because what happens is if you don't respond he believes he

10   wins so he sends something else to say okay, now I can collect        14:15:46

11   because you never responded to my documentation.

12          He sent -- he and his staff sent out tens of thousands

13   of documents on behalf of taxpayers to the IRS and then to

14   other places to get their debt eliminated.

15          THE COURT:  Is that in the presentence report?                 14:16:07

16          MS. JENNIS:  It is, Your Honor.  It talks about it in

17   the beginning of the presentence report in the offense conduct.

18   It talks about the ideology.

19          THE COURT:  That I recall, but tens of thousands of

20   documents I did not recall.                                           14:16:23

21          MS. JENNIS:  It doesn't say those documents.  I

22   believe that came out at trial.  But certainly --

23          THE COURT:  Okay.

24          MS. JENNIS:  -- I can tell you that when we conducted

25   the search warrant, I was trying to see, it was at least 75,000       14:16:35

documents that were seized.  They get copies of a lot of
documents they had already sent out.  Now, remember, they
create the documents.  The documents get mailed out to the
client or to -- they don't mail them directly to the IRS.  The
client would do that.  But they did on occasion, they would
mail them to courts and they would keep copies of everything
they mailed out.  And so those items were seized along with,
you know, all the stuff that was contained on the computers.

He also attempted to impede the IRS by filing a
fictitious lawsuit against the IRS.  Mr. Hall is the figure
head of the sovereign citizen movement.  And now there are not
only civil and criminal cases kind of sprouting up throughout
the country, in addition to his own, but this would involve --
the IRS is not the only one involved in these cases.  In this
case the FBI was obviously involved also.  And countless
attorneys from both the civil and criminal sections of the
Department of Justice to investigate takes -- I can't even
imagine how many people it's going to take to investigate and
prosecute these cases and not to mention the number of cases
that will be charged in all the courts throughout the United
States that will be involved.

Yesterday, Your Honor, you talked about Mr. Adams
vandalizing the United States, but it's not, with all due
respect, it's not just vandalism.  It's called domestic
terrorism.  That is what Mr. Hall has done, and that's why the

14:16:56

14:17:17

14:17:43

14:18:00

14:18:23

1    United States brought this case.

2         If he isn't sufficiently punished, the next scheme is

3    going to be bigger and uglier.  No one could have done this

4    scheme without Gordon Hall.  While it's clear that Mr. Adams

5    was the one who thought up the money orders and had that          14:18:42

6    particular scheme, Mr. Hall has the clients.  He's the face of

7    this movement.  He is all over TalkShoe, on the internet,

8    radio, You Tube, seminars all over the country, perhaps even

9    out of the United States.  I know that Mr. Adams went outside

10   the United States to conduct his seminars.  So they were         14:19:07

11   conducted everywhere.  And he obviously got paid from something

12   because he had this big house with lots of valuable items in

13   it, the coins and the guns.  I don't really know where any of

14   that came from.

15        So, Your Honor, we need to send a message.  And what        14:19:23

16   better way than to cut off the head of the snake by sentencing

17   Mr. Gordon Hall, the leader of the citizen -- sovereign citizen

18   movement, and the acts of terrorism, domestic terrorism that he

19   has conveyed on the United States by trying to shut down the

20   IRS and the courthouses by all his frivolous filings and        14:19:50

21   actions.

22        And so therefore, it's very important, Your Honor,

23   that you impose a guideline sentence.  And I agree that the low

24   end would be good and it can be run and it should run

25   concurrent with his current sentence out of South Carolina.     14:20:08

1          THE COURT:  What, again, is the amount of time he has

2    remaining on the South Carolina sentence assuming he gets the

3    benefit of good behavior?

4          MS. JENNIS:  126 months.  And let me tell you how I

5    calculated that.  He received 180 months, and he was arrested          14:20:22

6    in March of 2013.  So taking 85 percent of 180 months, I

7    believe it was 153 months.  And 153 months less 27 months would

8    be 126 months left on his sentence.

9          THE COURT:  27 months is the discount for good

10   behavior?                                                              14:20:51

11         MS. JENNIS:  No.  What I did is I took 180 months

12   times 85 percent, which would be 153 months.

13         THE COURT:  Right.  Right.

14         MS. JENNIS:  He has served 27 months to date.

15         THE COURT:  Now, the presentence report states he has          14:21:01

16   413 days of presentence custody here.  Is he going to get

17   credit for all that on this sentence?  The reason I ask is I

18   know he's detained in South Carolina but he's taken here.  It's

19   just not clear to me what he -- now, assuming I give concurrent

20   sentences, as you recommend, that may answer that question.  I          14:21:26

21   just want to be clear whether my sentence, whether he gets

22   credit for that 413 days for this sentence even though he has

23   been in custody.

24         MS. JENNIS:  Certainly.

25         THE COURT:  I thought we had him brought out here from          14:21:41

```
 1   South Carolina for this case.  Did we not?
 2        MS. JENNIS:  He -- I think he had his initial
 3   appearance in South Carolina if I -- and I don't recall.  But
 4   he should get credit for the 400 however many days it was, 413
 5   days, Your Honor.  Because he should get credit from the date      14:22:05
 6   of his arrest for this indictment.  That would be how it would
 7   usually work.  You don't get credit before you are arrested on
 8   a case.  But he should get credit from the date of his arrest.
 9        THE COURT:  What about age?  He's 61 years old now.
10   We're looking at a lengthy sentence no matter how it comes out.   14:22:33
11   At some point, does the purposes of sentencing, especially for
12   this case, the deterrence purpose, play out as against just
13   having the Bureau of Prisons take care of very elderly and
14   possibly infirm people?
15        MS. JENNIS:  Well, I think the world has changed, Your      14:23:01
16   Honor.  And I think that when he is 71 and finishes his South
17   Carolina case, I would not consider that elderly.  He certainly
18   will be well taken care of by the Bureau of Prisons.  I don't
19   see a problem.  I think he will be alive when he is released.
20   And people live a long time, and he has had, you know, he's not   14:23:22
21   a frail gentleman.  He was healthy when he was arrested, and he
22   appears, at least as far as I know, to still be healthy since
23   he's been in the Bureau of Prisons.  So I think that if he gets
24   out when he's in his 80s he will still have plenty of life left
25   to live.                                                          14:23:50
```

1          THE COURT:  All right.

2          MS. JENNIS:  Thank you.

3          THE COURT:  Mr. Kunkle, I will hear your allocution.

4          MR. KUNKLE:  Your Honor, with the Court's permission,

5     if we could have Mr. Hall allocute at this point and I could go          14:23:59

6     after Mr. Hall.

7          THE COURT:  Mr. Hall, is there anything you would like

8     to say to the Court before sentencing?  Speak into the

9     microphone.

10         THE DEFENDANT:  Are you speaking to me or are you          14:24:18

11    speaking to the defendant?  As a living man here in front of

12    you, whereas any authority or whereas the contract or the

13    agreement that gives the authority to sentence a living man,

14    one, that is not in possession of state-owned property; two, is

15    not a trustee for any defendant in these actions, and three, is          14:24:58

16    not in contempt of this Court.

17         Let the record show nobody disagrees that as a living

18    man here, that it is in agreement that there is no authority to

19    sentence a living man, who is not in possession of any state

20    owned property or controlled property, isn't a trustee for any          14:25:26

21    defendant in these proceedings, nor in contempt of this Court.

22    What you do with the defendant is not my business then as a

23    living man and not part of this.  Thank you.

24         THE COURT:  Mr. Kunkle, I will hear your allocution on

25    behalf of your client.          14:25:45

1          MR. KUNKLE:  Your Honor, we have the had the benefit

2     yesterday, yesterday's sentencing, and I was here obviously

3     taking some notes so if I refer to anything I don't mean to put

4     words in your mouth.  But going forward on this case, first,

5     the gravamen of the charge is that these fictitious monetary          14:26:15

6     instruments caused a great loss to the government.  And I know

7     Ms. Jennis's comments before the Court about relating some of

8     what people believe in the sovereign citizen movement to

9     domestic terrorism might think is a little attenuated if not

10    unfounded.                                                            14:26:45

11         THE COURT:  Let me say, I -- people are entitled to

12    believe anything they want.  The law restricts their conduct.

13    So people can believe the United States government is

14    illegitimate.  They can believe anything they want.  But their

15    conduct is what is prohibited or required by the laws.                14:27:02

16         And also, I certainly do not hold it against Mr. Hall

17    at all that some other people may engage in violence.  That

18    just is no part of my analysis for sentencing.

19         MR. KUNKLE:  And, Your Honor, in this case, and I

20    think even the words used by Ms. Jennis moments ago, regarding       14:27:25

21    impeding the IRS are rather important.  At trial, that was one

22    of the themes, obviously, that, you know, whether you like it

23    or not, T.W. Lyons and the name of the woman who testified on

24    behalf of the government and the IRS, whether Ms. Jennis

25    characterized it as tens of thousands of documents, thousands        14:27:48

of pages of documents, I believe the testimony at trial was

that there were two boxes or three boxes in the mail room of

documents that Mr. Hall had mailed to the IRS over time.  One

of them was Exhibit 6 at trial, and that one is put together by

the government.  Their trial exhibit was like 40 pages.  I know

Your Honor has seen these before, similar documents with note

of dishonor, notice to principal, notice to agent.

          I'm not going to stand here and tell you that there's

any validity to some of what the sovereign citizen movement, if

you will, generates in its paperwork towards the IRS.  Moments

ago Mr. Hall spoke, if you don't agree then it's considered an

acquiescence kind of that theme out of the UCC.  If it's

presented for payment and you dishonor or return it then well,

that's okay, it's been accepted for value.

          But in there is a kernel of it that people have fear

regarding debt, the way the government borrows money.  Being a

student of history I note that some of the arguments that I

have seen in the sovereign citizen movement, for lack of a

better term, are rooted in what purist and constitutional

theory call the idea of consent that people give to their

government and how much money they want their government to

borrow and how they fear that debt the government takes on that

they saddle their citizens with.  That's legitimate protest.

          And it does morph into much of what the foreperson, if

you will, the forefront of the government interaction with its

1    own people in the IRS.  And when Ms. Jennis was speaking

2    moments ago about impeding the IRS, that's really what this

3    case is about.  And the guideline measurement in this case is

4    way overstated.  I would note that under Section 514, I

5    believe, two Ninth Circuit cases, one was *Howick* and one was          14:29:51

6    *Salman*.  And *Salman* was more akin to this case where documents

7    were being sent in, fictitious documents, to the IRS.  *Howick*

8    was a case they found Mr. Howick in possession of these things.

9    He was an elderly man.  There was no evidence where they were

10   going to be used except that he had possession of many of them.        14:30:15

11   He ended up getting the two years.  I think that was the case

12   Mr. Heath was referring to yesterday.

13           THE COURT:  We have all the time anyone needs so we're

14   not short at all.  But I should put it on the table that one

15   serious question in my mind is whether to impose a concurrent          14:30:31

16   sentence.  Another way to look at this problem is the

17   culpability harm done that has nothing to do with the sentence

18   imposed in the Court in South Carolina, so it may be that the

19   better way to approach this is to allow Mr. Hall to pay his

20   debt to so society for that conduct and not give him credit for        14:30:56

21   having committed that other crime as against this one.

22           My mind is entirely open on that, and I am not at all

23   presuming that I will impose concurrent sentences because it's

24   been recommended.

25           MR. KUNKLE:  Your Honor, just to harken back to               14:31:18

```
 1   yesterday, you used the term vandalism.  And in a sense, the
 2   idea that the IRS was going to be defrauded out of these, I
 3   don't take the government at its word that any one of these
 4   money orders was ever going to be paid.  They might muck up the
 5   works, yes, because an unwitting employee may deposit them.          14:31:38
 6   But at first blush, if you look at the document it's obvious
 7   that it's just bogus.  And the idea that the IRS was going to
 8   be out millions of dollars, that didn't happen here.  This
 9   wasn't like a 1099 OID scheme where the IRS had some
10   culpability for paying out refunds to people through false tax      14:32:01
11   return filings.
12        But I would just submit to you that 24 years for
13   mailing two obviously fictitious money orders to the IRS that
14   merely caused an inconvenience on Mr. Lyons' part to come in
15   from a day he was working at home because he believed he may        14:32:25
16   have to process them based on what his secretary told him, I
17   don't believe that merits 24 years.  I don't believe that's
18   what this case is worth.  I don't care if Mr. Hall has four
19   felony convictions or three or 10.  It's not a 24-year sentence
20   case.                                                               14:32:42
21        THE COURT:  Perhaps not.  But on the other hand, this
22   case is unlike most, certainly unlike Mr. Adams yesterday in
23   that Mr. Hall has an extensive history as a financial predator.
24   And so one of the purposes of sentencing is just to keep
25   people, disable them from hurting more people for as long as        14:33:02
```

they are in prison.  That certainly is a factor to be

considered.  It's frankly, my mind it's not a factor to be

considered in most cases because in most cases once we think

through purpose of deterrence and public deterrence, that we've

gone beyond the justification just to keeping people out of

circulation.

But Mr. Hall is a predator, not just occasionally but

for decades.  So one benefit of having him in prison is he

won't be able to run any scams on anybody as long as he's in

prison.  That's one factor.  And again, to my mind, this plays

into the question of -- well, one reason for giving concurrent

sentences is that if the new sentence, with the amount of time

you would give for that with the comfortable conservative

assessment is already being achieved by another sentence,

that's a reason to give a concurrent sentence.

But on the other hand, in this case, I can think

through purposes of sentencing for this case that really

wouldn't -- I could say the sentence should be thus and such

amount of time he can start dealing -- serving that when he's

dealt with the other sentence.  It's just not -- the

mathematics is always interrelated.

But so I'm sorry for interrupting your thoughts.  I

want to hear everything.

MR. KUNKLE:  I understand.  Your Honor, plain and

simple, I believe the presentence report alluded to the fact,

1   and I don't think the government would object to these

2   characterization, and I believe at one point in time, the

3   government informed me that Mr. Hall had already been under

4   investigation here in this district when the South Carolina

5   case happened.  To the extent that the South Carolina case is

6   related to this it all spawns from the same --

7        THE COURT:  I don't see any relation at all.  Is there

8   any relation to the South Carolina case?

9        MR. KUNKLE:  Oh, yes, there is.  The way I see it is

10  the same ideology, if you will, that led to the South Carolina

11  case in that it was my understanding that case was a Ponzi

12  scheme being perpetrated by others in South Carolina, and the

13  fraud there, if you will, was in the concealing of assets from

14  the receiver appointed by the Court in terms of moving property

15  to entities with some kind of payment by individuals in that

16  Ponzi scheme.  That's my loose understanding in that case from

17  conversations.  And to answer the Court's other question

18  there's no appeal on that case.  For whatever reason, I believe

19  because it was a plea agreement, but it was a no contest plea

20  agreement.  There was some issue with the appeal being filed

21  timely and whether it was going to be an appeal at all.  But

22  that case, the last I checked on Pacer in the Fourth Circuit

23  that appeal had been denied.

24       THE COURT:  There had been a Notice of Appeal but

25  untimely?

14:35:14

14:35:27

14:35:49

14:36:09

14:36:24

1      MR. KUNKLE:  Yes.  And it was denied.  They went back

2  to the district court to try to get leave to appeal untimely,

3  and that was denied as well.  So Mr. Hall was serving that

4  15-year sentence with, approximately Ms. Jennis's calculations

5  were pretty correct.  One thing she did miss, though, is that          14:36:36

6  he does not get good time on the last two years because he's

7  not in BOP custody.  That good time that he would have normally

8  received is gone.  They only credit you with good time when you

9  are in their custody at one of their facilities.

10      But back to the numbers, Your Honor, this not being a          14:36:56

11  case, in my opinion, or in your opinion, merits 24 years in

12  prison.  And you call Mr. Hall a financial predator but notably

13  not one person who believed in what Mr. Hall was selling,

14  whether it's true or not, came forward to testify that they

15  believed they had been defrauded.  Now, the government's          14:37:19

16  telling us there may be charges pending against some of those

17  people for whatever reasons the government may have to bring

18  those cases if they are filing their own money orders.

19      But in this case, when Mr. Hall is done with that

20  South Carolina sentence he's going to be approximately 71 years          14:37:35

21  old.  If you were going to give him 24 years dating from the

22  date of this offense, which would be the arrest date, how it

23  gets computed, is my understanding is the date of designation,

24  he wouldn't be released until 2038.  By my math, he would be

25  almost 81 years old.  It's almost an additional nine years on          14:37:51

1    top of what he's getting now, being the difference roughly

2    between the 24 years and the 180.

3            And again, despite what the government would tell you,

4    the healthcare inside the Bureau of Prisons is not state of the

5    art.  They do take pretty good care of people.            14:38:10

6            THE COURT:  I was thinking as much about the Bureau of

7    Prisons as about Mr. Hall.  At some point does it make sense to

8    burden them with very elderly people.

9            MR. KUNKLE:  And I don't know what harm Mr. Hall would

10   cause anyone if he came out of prison in his 70s.  Behind me    14:38:25

11   are his children.  And as you know, Shannon testified against

12   him at trial.  His other daughter, Ali is here.  And his family

13   is known -- and to go back to the '90s, again, I'm without

14   benefit of the back and forth of Mr. Hall.  And I know that in

15   that case, Your Honor, it was a stock manipulation scheme as    14:38:50

16   it's spelled out.  But Mr. Hall went to the prison for the

17   first time in the '90s.  And when Ms. Jennis speaks about

18   coming into the sovereign movement in full swing in 2009 it

19   started before then.  And one statement that stuck with me is

20   what his daughter Shannon said, and it was after the loss of    14:39:08

21   his two children who died while he was in custody in the early

22   part of the decade is -- and again, I don't want to put words

23   in Ms. Hall's mouth, but he kind of lost his mind and he became

24   really enwrapped in this.  And the reason people really become

25   enwrapped in the sovereign citizen movement is because they    14:39:28

1    feel powerlessness.  They feel that the government has all the

2    cards in their hands.

3          And while Ms. Jennis speaks about sending a message

4    with the sentencing, in some ways, the message you send here

5    today may or may not reverberate through that movement, if you    14:39:44

6    will, that he's the figurehead of as Ms. Jennis characterizes

7    him.  But in some ways, it almost plays into that to say, see,

8    I told you so.  This is what happens to you.  They have the

9    jails.  They have the prisons.  They have the guards.  One of

10   the underlying themes of all that, and Mr. Hall just spoke to    14:40:02

11   it, was where is your jurisdiction over me?  And, you know, I

12   came to Mr. Hall's case a year ago through a court appointment

13   just random, obviously.  This is my third go-around in trying

14   cases in this district, the first one some years ago before

15   Judge Murguia.  I had another sovereign, if you will, before    14:40:23

16   Judge Campbell.  And there's always this tension as to who are

17   they defrauding?  The government or the people who they have as

18   clients that they bring in?

19         THE COURT:  Mr. Hall clearly has a history of

20   defrauding other people, including using this movement to get    14:40:38

21   money out of other people.  So there is that.  There is also

22   the issue of -- well, I called it vandalism yesterday but

23   setting out to -- I will tell you a short little story that

24   doesn't matter, when I was in law school over 40 years ago, I

25   befriended a student from -- it was actually a graduate student    14:41:00

1   lawyer from another country.  I won't mention the country, a

2   third world country.  He was a tax official in that country and

3   he was getting a master's of law in tax at our law school.  And

4   he lived across the hall from me in the dormitory, got to know

5   him.  And I remember him telling me that our tax system in this        14:41:20

6   country is the envy of the world because people assess the

7   taxes against themselves and they pay them.

8           This conduct we have seen here is an attempt to

9   obstruct that, to deprive not just the government as an

10  abstraction but our society as a whole of the benefit of a tax        14:41:42

11  system that people generally pay.

12          Now, there's many complaints to be made about taxes

13  and tax policy, and I'm certainly not endorsing a current

14  policy against anything.  But the system -- that system of the

15  government working with people assessing and paying it is just        14:42:04

16  being not just obstructed but it is a kind of vandalism to

17  burden the government with this kind of obstruction.  And

18  although I don't really go beyond the presentence report and

19  things that have been available to both sides, that is apparent

20  from what the Court is fully aware of from the trial and          14:42:25

21  everything else in this case.

22          So there is more at stake here than just the fact that

23  only a few of these documents actually got credited before they

24  were caught.  And I don't -- you don't -- I don't make any

25  judgment about people who don't believe in the federal          14:42:50

1    government.  But that is genuine obstruction that is a

2    legitimate consideration.

3              MR. KUNKLE:  Your Honor, but impeding IRS, obstructing

4    the IRS, I think you asked Mr. Heath yesterday, my recollection

5    is a three-year stack max under 7212, not five.  And really, if          14:43:11

6    people want to, you know, muck up the works for lack of a

7    better term, of the IRS, they want to mail in a $100,000 candy

8    bar wrapper that says, here's my tax debt and the IRS gets

9    empty candy wrappers, yes, that's obstruction.  That might be

10   7212 conduct.  People have all kind of ways of protesting.  I          14:43:34

11   don't believe any one of these money orders was ever paid to a

12   routing number connected to a social security number anywhere.

13   And I also find it even harder to believe the government's

14   assertion yesterday that the entire IRS was about to pay out

15   money orders and drop liens on properties and that's some          14:43:50

16   danger.  This is a protest.

17             THE COURT:  I'm not asking you to admit anything, but

18   they are trying to get it credited.  It wasn't mailed in with a

19   cartoon attached it for laughs.

20             MR. KUNKLE:  No, the matter was alluded to in the          14:44:06

21   trial with Ms. Edelstein, this wasn't a banana mailed in with

22   routing numbers.  I agree with that.  But the money order on

23   its face directing Timothy Geithner to pay out to the Treasury

24   based on a social security number on this loosely known theory,

25   redemption theory to pay off an old tax debt is just ludicrous.          14:44:21

1    Everyone would know that.  Yes, much of what they come from is

2    a protest against their government that at some points goes too

3    far.  Mr. Hall has his history.  But 24 years is way too much.

4    And this Court is not and should not about sending a message.

5    The message is to Mr. Hall.  If you want to send a message to          14:44:43

6    the --

7         THE COURT:  There's a message beyond the statutory

8    purposes of sentencing that includes deterrence to individual

9    and public.

10        MR. KUNKLE:  And if the government wants to send a            14:44:55

11   pest message they can spin a press release when the case is

12   concluded, which I'm sure they will next week.  But the point

13   being, Your Honor, Mr. Hall at age 61 is looking at potentially

14   spending what may be the rest of his life in prison.  He owes

15   $172,000 in restitution on the South Carolina matter.  He is        14:45:12

16   still going to go --

17        THE COURT:  He owes a million and a half dollars of

18   taxes for 20 years.

19        MR. KUNKLE:  And, Your Honor, I came across cases

20   that, like it or not, one of them was *United States versus*        14:45:23

21   *Neal*, where Mr. Neal was an inmate at Atwater and was

22   attempting to file liens against BOP guards by having them mail

23   it out of prison.  So it's not the incapacitations that's going

24   to necessarily stop things, but I'm sure Mr. Hall is aware of

25   that now.                                                            14:45:48

1          But I would just submit that incarcerating him into

2     his late 70s, even his mid 70s, is more than adequate

3     deterrence.  It's more than sufficient.

4          THE COURT:  On the other hand, you know, there isn't

5     any focused reason to think that Mr. Hall will be deterred no          14:46:05

6     matter how long he's in prison.  Now, I think that is not a

7     reason to impose a sentence longer than what would be a normal

8     midrange effective deterrence to an individual.  But there's

9     certainly no reason here to look for a lighter sentence out of

10    hope that he will stop victimizing people, whether he's 75 or          14:46:29

11    80 when he gets out.  Maybe the other factors are more

12    significant than that.  But I guess my concern here is there

13    are a lot of people who have been victimized through a lot of

14    his life, and there's no reason to think he will stop.

15         MR. KUNKLE:  The only victim that I heard testify in          14:46:53

16    this case is maybe Mr. Lyons who came in on his day off to

17    deposit a $100,000 money order that didn't exist.  That's it.

18    And the other people, to the extent they had money orders

19    printed on their behalf, if that's what they choose to send in,

20    then that's what they close the send in.  But I don't perceive          14:47:11

21    those people as victims.  And this Court's focus should be on

22    what this case is about not on what happened 20 years ago in

23    New York City, obviously, with a Rico case or anything else.

24         But I would just submit to the Court that Mr. Hall's

25    guideline number is driven largely by, I think what this Court          14:47:32

would have to concede is an overly inflated loss number.  Just
by way of comparison, yesterday the million and a half number
on these two money orders, I believe, is a 16 point specific
offense characteristic under the guidelines under the 2B
guidelines.  And with the Criminal History Category IV that

14:47:54

still leaves 77 to 96 months which curiously is just about the
amount of time over and above the difference between 24 years
and 180 months.  I'm not suggesting that that, even then, is a
fair sentence.  But the $92 million is -- it is just an absurd
number to be basing any sentence on in this guideline,

14:48:17

fashioning a sentence in the presentence report.

          And to that extent, Your Honor, this case about
fictitious instruments, in my short lived history before this
Court of about 10 years of trying these cases, the government
has taken a tact in these cases to not try these cases as tax

14:48:38

cases.  It makes some sense because they don't have to get into
a good faith belief issue of what people truly believe and run
that down the gauntlet of a federal jury.  So they charge them
under filing false claims or, in this case, fictitious
instruments, which I was quite surprised upon initially

14:49:00

receiving the indictment to learn was a Class B felony
punishable of up to 25 years for sending funny money to your
government in a protest.  Had they sent in monopoly money or a
check that said payable to who, you know, because he plays
first base, I don't think we would be here.  I don't think this

14:49:18

38

```
 1    is an intent that they ever believe is going to get their tax

 2    liabilities extinguished.  I think it's an intent to impede the

 3    IRS and that's how the case should be sentenced.

 4           And I would ask you to consider the fact that Mr.

 5    Hall, who as difficult, obstreperous an individual as he has    14:49:35

 6    been before this Court, still deserves fair sentencing, not

 7    based on his conduct or his behavior here or difficulties he

 8    posed to the marshals.  I'm only putting it out there, Your

 9    Honor, not suggesting you would do that.

10           THE COURT:  It's not the first time I had to deal with   14:49:52

11    it.

12           MR. KUNKLE:  Yeah.  And so I don't know if Your Honor

13    has any other questions.  I just don't believe that keeping

14    someone in prison for lengthy periods of time serves any more

15    purpose, especially when you talk about keeping somebody well   14:50:05

16    into their senior years.  And I would just submit that Mr.

17    Hall, coming out of prison in his mid 70s, is more than

18    sufficient punishment in this case.

19           And I would just submit that, you know, coming as it

20    is, and I know under 5G, Ms. Chappell alluded to this in the    14:50:24

21    presentence report, you have the ability to run partially

22    concurrent, concurrent consecutive, and I do not believe Mr.

23    Hall deserves to spend the rest of his life in prison.

24           THE COURT:  I always let the defendant have the last

25    word in allocution but since you have just gone first I will    14:50:41
```

1    give Ms. Jennis an opportunity to reply.  If she does, again,

2    you can have the last word.

3            MS. JENNIS:  Your Honor, I believe -- I don't have a

4    statute book to look at, but I do think that at some point if

5    Mr. Hall was sick there is a statute that allows him to apply          14:51:03

6    to be released due to his age.  I just couldn't recall the

7    exact statute.

8            THE COURT:  I remember that in general, too.

9            MS. JENNIS:  Under the guidelines, under 5H1.1, they

10   talk about age and how it may be relevant in determining              14:51:20

11   whether a departure is warranted based on age.  Age may be a

12   reason to depart downward in a case in which the defendant is

13   elderly, infirm, where a form of punishment such as home

14   confinement may be equally as efficient and less costly than

15   incarceration, which I don't believe is the case here.  And          14:51:39

16   home confinement, he could continue to commit the crime.  And,

17   in fact, I think that's something to consider.  The type of

18   crimes he's committed are crimes that he can commit at any age.

19   In fact, when he's older he maybe has less to lose.  He can

20   still do his talk shows and think, well, no one is going to do       14:52:01

21   anything to me because now I'm 70 or 80 or whatever age he may

22   be.

23           Also, I just want to let you know that the South

24   Carolina case was a Secret Service investigation.  It didn't

25   have anything to do with the IRS.                                    14:52:18

1          And lastly, Your Honor, I don't believe that Mr. Hall

2   feels powerlessness.  He did this for money.  He may have these

3   beliefs also, but his actions, his unlawful actions were to

4   make money and to eliminate debt.  He was paid by his clients.

5   These certainly weren't things he just did to eliminate his own     14:52:42

6   debt but he also did this to make money.

7          Thank you.

8          THE COURT:  Any last word, Mr. Kunkle?

9          MR. KUNKLE:  No, sir.

10         THE COURT:  All right.  First I just want to -- the          14:52:54

11  guidelines are technically correct, as I previously ruled, but

12  somewhat in parallel to my remarks yesterday in Mr. Adams'

13  sentencing, I do consider the $93 million to be an

14  overstatement.  And if the guidelines were lower -- and

15  yesterday, I just thought through.  I think I had the 16 level    14:53:31

16  instead of 24 level for Mr. Adams.  But that was just on the

17  two checks.  But on the other hand, those are the same two

18  checks in this case.

19         If I thought it through that way, with the two-level

20  enhancement in Paragraph 23 for use of counterfeit access        14:53:53

21  devices, and the four-level enhancement for organizer or leader

22  role, both of which are entirely appropriate here, that would

23  be equivalent to an offense level of 29.  And at a Criminal

24  History Category of IV, that would be a guideline range of 121

25  to 151 months.                                                   14:54:22

1        Of more importance, really, is the statutory purposes

2   of sentencing, which are more difficult to quantify.  But

3   still, we give consideration to, one is a group of closely

4   related purposes.  One is the nature and circumstances of the

5   offense, the need for the sentence to reflect the seriousness          14:55:07

6   of the offense, to promote respect for law and to provide just

7   punishment.  I view this as a very serious offense for reasons

8   I have touched on already.

9        First of all, for people who have sophistication about

10  these kinds of documents, if you look at this document, it is          14:55:34

11  not stamped with a rubber stamp that says this is a joke.  It's

12  not a document that somebody who is sophisticated and paid

13  careful attention to is likely to credit.  But it was clearly

14  intended to be credited.  So I don't think there's anything

15  inappropriate of thinking of this as an offense of the                 14:56:14

16  seriousness that would reflect an offense loss in that million

17  and a half dollar range.  I think the bracket is one million to

18  two million for guideline calculations.

19       The other factor, or another factor, is the history

20  and characteristics of the defendant.  And here, Mr. Kunkle, he        14:56:38

21  not only has a Criminal History Category IV, he has three

22  serious financial fraud convictions in the past.

23       Somewhat related to that is the need to afford

24  adequate deterrence to the defendant.  As I remarked before I

25  really find it hard to conclude that Mr. Hall is going to -- is        14:57:03

1   likely to acquire a sense of his obligations to his community

2   to everyone who has to pay for government and the need for the

3   government to be -- to have the resources to pay for the things

4   that our democratically elected government decides to spend

5   money on even though none of us agrees with everything.  I just     14:57:30

6   cannot be optimistic that Mr. Hall will acquire that sense of

7   responsibility to his community.  And therefore, any sentence

8   can be justified on the basis of its appropriateness to deter

9   Mr. Hall.

10          A second branch of the purpose of affording adequate      14:58:02

11  deterrence is the need for public deterrence, to deter other

12  people who would contemplate engaging in this kind of conduct.

13  I view that branch of the deterrence purpose as being more

14  important, Mr. Hall, in your case.  We need to have a sentence

15  here that communicates to people who may not like the              14:58:20

16  government, may hate it, but if they set out to send documents

17  for the purpose of defrauding the government, even if they get

18  caught, that it isn't a joke.  It will not be treated as a

19  joke, and doing this in a systematic way is a very serious

20  matter that people need to think about the harm they are doing     14:58:47

21  and that the harm of it isn't worth either the political

22  philosophical gratification or the sense of humor or whatever

23  it is.  It's not going to be -- should not be worth it.

24          Another factor I touched on already is the need for

25  the sentence to protect the public from crimes of the              14:59:12

defendant.  That's a very serious motivation in this case,

purpose in this case.  Whether it's participating in the

bankruptcy fraud in South Carolina or securities fraud in New

York or this kind of attempted fraud on the government, at

least Mr. Hall while you are in prison, you won't be able to do

that.

There is another factor into the law that applies, I

think applies here in an indirect way, and that is the need to

provide the defendant with education or vocational training,

medical care, or other correctional treatment.  Now, that's an

unusual factor, because I have always been of the view that it

never justifies putting anybody in prison for any longer.

That's sort of a side benefit in some cases to having people in

prison for reasons that are otherwise justified.

But this one seems to me to bear into what I have

raised earlier, and that is that at some point people are old

enough and at enough risk of frail health that deterrence and

protection and other reasons of imprisonment diminish

significantly.  So that leaves me to think through Mr. Hall's

age.

Looking at this sort of alternate, what I will call a

practical guideline calculation rather than the technical

guideline calculation, it still ends up with a sentence of 121

to 150 months as a guideline.

The Court really has a judgment and discretion on

this, but I find it personally easy to think more -- easier to

think this through in terms of what is the least amount of

punishment for this crime and not distract myself with the fact

that the defendant already has a lengthy sentence to serve for

an unrelated crime.                                              15:01:52

        Oh, and also, Mr. Hall, I'm sure your lawyers have

attempted to explain this to you, but you have it within your

power to reduce your own sentence by engaging in good conduct

while you are in the custody of the Bureau of Prisons.  You can

get a reduction of your sentence up to 15 percent.  Now, you    15:02:46

don't have to engage in good conduct.  You could just have the

fun of obstructing prison, but you have to serve your full

sentence.

        So when I think through the sentence, I give you the

credit for electing to conduct yourself well and to get the     15:03:03

benefit.  Mr. Hall, I think there is serious risk that you will

continue to be a threat to people and a harm to people well

into your elder years.  And therefore, it is appropriate to

impose a sentence that's otherwise warranted here, even though

it takes you into an older age.                                 15:04:05

        Oh, and I can't remember if I already mentioned this,

to the extent it's a closer question, I'm required to give the

more lenient sentence that has the sufficient prospect of

serving the statutory purposes of sentencing.

        And considering all these factors, I'm satisfied that   15:05:46

1    a sentence of 96 months, which is eight years, is a sufficient

2    sentence to be served consecutive to your existing sentence.

3         So if you behave well, you can be out of prison while

4    you are still in your late 70s.  You will have the prospect of

5    some degree of good health and some life left.                    15:06:17

6         So this is a -- requires a variance of -- that's a

7    13-level variance that I will base on -- well, ironically,

8    partly the history and characteristics of the defendant, and

9    that is age.  That cuts in your favor.  Plus the factor I

10   mentioned, the statutory factor, which I take in a reverse way    15:07:21

11   of the need for the sentence to provide the defendant with

12   education, vocational training, medical care, or other

13   correctional care which I am applying in a way that looks to

14   your likely age and the diminished prospect of the need for you

15   to be in prison after a certain age.                              15:07:41

16        And also in imposing this sentence, I give specific

17   consideration to the fact that this sentence will be

18   consecutive to your sentence in the South Carolina case and the

19   amount of time you will be in prison in that case.  Those two

20   matters are substantially unrelated, and I'm -- in my judgment    15:08:08

21   and discretion, it is really not appropriate to give you what

22   amounts to a discount for committing these multiple and

23   unrelated very serious crimes.

24        So pursuant to the Sentencing Reform Act of 1984, it

25   is the judgment of the Court that Gordon Leroy Hall is hereby     15:08:36

```
 1    committed to the Bureau of Prisons for 96 months.

 2              This term consists of 96 months on Count 1, 96 months

 3    on Count 2, 96 months on Count 3, and 96 months on Count 4, all

 4    such terms to run concurrently.  This sentence is also

 5    consecutive to the sentence of incarceration in the United          15:08:58

 6    States District Court, District of South Carolina, Case Number

 7    6:13-CR-00170-JMC-1.

 8              The defendant shall pay a special assessment of $400

 9    which shall be due immediately.  The Court finds the defendant

10    does not have the ability to pay and orders the fine waived.         15:09:37

11              The defendant shall pay a total of $400 in criminal

12    monetary penalties, due immediately.  Having assessed the

13    defendant's ability to pay, payment of the total criminal

14    monetary penalties is due as follows:  Balance is due in equal

15    monthly installments of $100 over a period of four months to         15:09:54

16    commence 60 days after release from imprisonment.

17              If incarcerated, payment of criminal monetary

18    penalties is due during imprisonment at a rate of not less than

19    $25 per quarter, and payments shall be made through the Bureau

20    of Prisons Inmate Financial Responsibility Program.  The Court       15:10:14

21    hereby waives the imposition of interest and penalties on any

22    unpaid balance.

23              Upon release from imprisonment, the defendant shall be

24    placed on supervised release for five years.  This term

25    consists of five years on Count 1, five years on Count 2, five      15:10:31
```

```
 1   years on Count 3, and five years on Count 4, all such terms to
 2   run concurrently.  This term of supervised release is also --
 3   well, I don't really need to address concurrency with the South
 4   Carolina case, do I, because it has not made them concurrent.
 5             THE PROBATION OFFICER:  I think it could still be        15:11:05
 6   consecutive.
 7             THE COURT:  I guess there's no harm in stating that.
 8             This term of supervised release is also concurrent to
 9   the term of supervised release in U.S. District Court, District
10   of South Carolina, Case Number 6:13-CR-00170-JMC-1.               15:11:19
11             While on supervised release, the defendant shall
12   comply with the standard conditions of supervision adopted by
13   this Court in General Order 12-13.  Of particular importance,
14   the defendant shall not commit another federal, state, or local
15   crime during the term of supervision.                             15:11:42
16             Within 72 hours of release from the custody of the
17   Bureau of Prisons, the defendant shall report in person to the
18   probation office in the district to which the defendant is
19   released.
20             The defendant shall comply with the following           15:11:55
21   additional conditions:  You are prohibited from making major
22   purchases, incurring new financial obligations, or entering
23   into any financial contracts without the prior approval of the
24   probation officer.  You shall provide all financial
25   documentation requested by the probation office.  You shall      15:12:13
```

cooperate with the Internal Revenue Service and pay all tax

liabilities.  You shall file timely, accurate, and lawful

income tax returns and provide proof to the probation officer.

You shall submit your person, property, house, residence,

vehicle, papers, computers as defined in Title 18 United States    15:12:34

Code Section 1030(E)(1), other electronic communications or

data storage devices or media or office to a search conducted

by a probation officer.  Failure to submit to a search may be

grounds for revocation of release.  You shall warn any other

occupants that the premises may be subject to searches pursuant   15:12:56

the to this condition.

        The Court adopts the facts as set forth in the

presentence report in support of the guideline calculations and

the reasons for sentence except as I have found otherwise in

this proceeding.                                                  15:13:11

        The Court finds the sentence to be reasonable in light

of the facts and the statutory purposes of sentencing and to be

sufficient but not greater than necessary to serve the

statutory purposes of sentencing.

        The probation officer reminded me that my uninformed      15:13:23

concern was -- may have been well placed that the term of

supervised release cannot be concurrent because the supervised

release from the South Carolina case will have been -- that

time will have run while he's still in prison for this

sentence.                                                         15:14:10

1          So I am thinking if he doesn't start serving the

2   sentence until he is released, well, it may depend on -- well,

3   there must be a way, because maybe he doesn't begin serving his

4   South Carolina supervised release until he is released from the

5   custody of the Bureau of Prisons which will be after.                    15:14:34

6          THE PROBATION OFFICER:  I guess it could be.

7          THE COURT:  Let me ask counsel.  I think perhaps the

8   way I said it is good enough that they are concurrent, unless

9   either counsel thinks otherwise.

10         MR. KUNKLE:  Your Honor, I was under the impression,       15:14:46

11   and I think the law is, they run concurrent while you are on

12   supervised release.

13         THE COURT:  Right.

14         MR. KUNKLE:  So South Carolina term would be held in

15   abeyance until he is released from prison on this case.          15:14:55

16         THE COURT:  Right.

17         Now, the Court finds the sentence to be reasonable in

18   light of the facts and the statutory purposes of sentencing and

19   to be sufficient but not greater than necessary to serve the

20   statutory purposes of sentencing.                                15:15:19

21         Mr. Hall, do you understand the sentence?

22         THE DEFENDANT:  Why would I understand anything in

23   light of the facts I have given you previously as the living

24   man in front of you and not in contempt of this Court or a

25   trustee for any of the defendants in these actions, et cetera,   15:15:44

1    doesn't make that offer moot.

2         THE COURT:  All right.  Well, the Court notes that the

3    defendant has refused to answer the question.  The Court also

4    notes it is completely obvious from the discussion what the

5    sentence is, that, and I repeat, the key part of it, Mr. Hall,                    15:15:58

6    you have been sentenced to 96 months in prison in addition to

7    the sentence you have already received in the federal court in

8    South Carolina.

9         Now, Mr. Hall, you have a right to appeal the judgment

10   of conviction and the sentence.  If you wish to appeal, you                       15:16:16

11   must file a Notice of Appeal within 14 days of today.  If you

12   request, a Notice of Appeal will be prepared for you and filed

13   for you.  If you cannot provide an attorney for yourself, an

14   attorney will be provided for you for purposes of an appeal.

15        Now, Mr. Kunkle, I want to revisit your motion to                            15:16:33

16   withdraw as counsel.

17        MR. KUNKLE:  Actually, Your Honor, the best way I

18   could tell the Court, the mechanism as I understand is that

19   will be taken up in the Ninth Circuit after I file the Notice

20   of Appeal.                                                                        15:16:49

21        THE COURT:  That's fine.  I had a thought, if you had

22   any concern about having to be counsel, I was ready to

23   discharge you now.  I have prepared a Notice of Appeal he can

24   sign himself.  And then he could ask the Court of Appeals to

25   assign new counsel.                                                               15:17:04

1    I am delighted if you are content to remain counsel of

2  record until filing a Notice of Appeal.  But in light of the

3  conduct of your client I'm ready to discharge you now if you

4  wish.  And I will advise him that he will need to sign this and

5  get it to us to file otherwise he will have no appeal.                    15:17:22

6         MR. KUNKLE:  Your Honor, I will file a Notice of

7  Appeal on his behalf.  The Federal PD spelled it out recently

8  and there's a mechanism with the Ninth Circuit commissioner

9  where he it's all taken care of in the Ninth Circuit.  I will

10 follow through and file that Notice of Appeal.                             15:17:39

11        THE COURT:  All right.  That's fine.  Once a Notice of

12 Appeal is filed this Court lacks jurisdiction to discharge

13 counsel.

14        MS. JENNIS:  I have one.

15        THE COURT:  Yes.  Ms. Jennis.                                       15:17:48

16        MS. JENNIS:  Yes, Your Honor.  When I filed a Motion

17 to Dismiss Count 5, the gun count, I neglected to also dismiss

18 the forfeiture allegation because the forfeiture allegation is

19 solely based on that count.  So my forfeiture unit asked me if

20 I could move at the time of sentencing to dismiss the                      15:18:08

21 forfeiture allegation.

22        THE COURT:  It is ordered granting the motion, the

23 government's Motion to Dismiss the Forfeiture Allegations and

24 they are dismissed.

25        Counsel, is there anything else either of you would                15:18:20

1    like to bring up before we conclude?

2              MS. JENNIS:  No.  Thank you, Your Honor.

3              MR. KUNKLE:  Nothing further, Your Honor.

4              THE COURT:  All right.  And the Court commends Mr.

5    Kunkle for his services in this case.                          15:18:32

6              We'll be adjourned.

7              (Proceeding concluded at 3:18 p.m.)

1

2

3

4

5

6                        C E R T I F I C A T E

7

8          I, LAURIE A. ADAMS, do hereby certify that I am duly

9     appointed and qualified to act as Official Court Reporter for

10    the United States District Court for the District of Arizona.

11          I FURTHER CERTIFY that the foregoing pages constitute

12    a full, true, and accurate transcript of all of that portion of

13    the proceedings contained herein, had in the above-entitled

14    cause on the date specified therein, and that said transcript

15    was prepared under my direction and control.

16          DATED at Phoenix, Arizona, this 9th day of September,

17    2015.

18

19                              s/Laurie A. Adams

20                              _____
                                Laurie A. Adams, RMR, CRR

21

22

23

24

25

UNITED STATES DISTRICT COURT